State v. Fountain

STATE OF NORTH CAROLINA v. MAX BRADSHAW FOUNTAIN

No. 714SC604

(Filed 15 December 1971)

1. **Automobiles § 127— driving under the influence — second offense — sufficiency of evidence**

    The trial court did not err in the denial of defendant's motion for nonsuit with respect to the "second offense" portion of a charge of driving under the influence where the State introduced a driver's license record from the Department of Motor Vehicles which showed, and it was stipulated that such record showed, that a person having the same name as defendant was convicted of driving under the influence in the Jacksonville Municipal Court on 17 November 1964, and defendant testified on direct examination that "seven years ago in 1964 there was a case of Driving Under the Influence," notwithstanding there was no admission by defendant that he was the same person referred to in the driver's license record and in the stipulation.

2. **Criminal Law § 166— abandonment of exceptions**

    An exception not argued in the brief is deemed abandoned. Court of Appeals Rule 28.

3. **Arrest and Bail § 6— resisting arrest — failure to charge on illegal arrest**

    In a prosecution for resisting arrest, the trial court did not err in failing to charge that if the arrest was illegal, defendant had the right to resist with such force as was reasonably necessary, where the evidence showed that the arrest was legal.

4. **Indictment and Warrant § 12— failure to write amendment into warrant — stipulation that warrant was amended**

    Defendant's contention that the warrant was not properly amended because the amendment was not actually written into the warrant *is held* without merit where the solicitor, in making the motion to amend, orally stated all the elements of the offense charged, defendant thereafter entered a plea of not guilty to that charge, and the record shows that the solicitor and defense counsel stipulated "that the warrant was amended to conform to the foregoing amendments."

APPEAL by defendant from *James, Judge,* 22 February 1971 Session of ONSLOW Superior Court.

Defendant was charged with second offense of driving under the influence, resisting arrest, and assault on an officer. At the end of all the evidence motion for nonsuit was allowed as to the assault charge. The jury returned a verdict of guilty as to the charges of resisting arrest and second offense of driving under the influence. From judgment entered on the verdict, defendant appealed.

*Attorney General Morgan, by Assistant Attorneys General Melvin and Ray, for the State.*

*Turner and Harrison, by J. Harvey Turner, for defendant appellant.*

MORRIS, Judge.

Defendant first assigns as error the denial of his motion for nonsuit with respect to the charge of resisting arrest and with respect to the "second offense" portion of the charge of driving under the influence.

The evidence for the State tended to show that at about 11:30 p.m. on 6 January 1971 defendant was driving on U.S. Highway 258 when patrolman Bron met him. Defendant was traveling at a high rate of speed in a 45 mile-per-hour speed zone. Bron turned around and gave pursuit. Defendant's vehicle was veering from his lane of travel across the center line and back into his lane of travel. Defendant's vehicle got up to 80 miles per hour in a 60 mile-per-hour speed zone and made no attempt to stop when Bron turned on his blue light. At that time Bron was about three car lengths behind defendant. Bron also turned on his siren, but defendant made no attempt to stop. About 6/10 of a mile from where Bron first turned on his blue light, defendant began to slow down and turned in a driveway with Bron right behind him. Defendant stopped in the driveway and Bron parked about a car length behind him, left his blue light on, and walked up to defendant's car as he was getting out. He was unsteady and had to hold onto the car to exit it completely. His eyes were very glossy and red and bloodshot. Bron asked defendant to get in the patrol car. As he walked to get in the car, he had to balance himself and held onto the fender. After he got in the car, Bron could "smell that he had some type of alcoholic beverage on his breath." Bron advised defendant that he was under arrest for driving under the influence and speeding. Defendant reached for the door handle and said "Hell, no, I ain't either," and proceeded to get out of the car. Bron got out of the patrol car, and went to defendant with his ticket book and pencil in his left hand. Bron walked up to defendant and grabbed him by his arm with his right hand in an attempt to stop defendant, whereupon defendant struck Bron in the face with his open hand. Bron then knocked defendant to the ground and attempted to put handcuffs

on him. While he was attempting to get the handcuffs open, defendant came up at him and Bron sprayed Mace in defendant's face. Bron lost his balance and fell and defendant got to the side door of the house and hollered to be let in. A woman let him in the house. Bron went back to his patrol car and radioed for assistance. When other officers arrived they asked defendant to come out, but he refused to do so. Shortly, however, his wife came to the door and said one of the officers could come in and talk to him. After being assured that she had no gun, an officer went in and, after a scuffle and assisted by another officer, brought defendant out. He was still belligerent and fighting. One of the officers hit him with his blackjack. Defendant was finally subdued and was put in the patrol car and taken to a magistrate's office where defendant's attorney, who had been called by defendant, was waiting. Defendant was very talkative and at first agreed to take the breathalyzer test but refused on the advice of his attorney. He was bloody about the head and face and his attorney asked that he be taken to the hospital. The officer agreed to do this as soon as he finished his report. However, defendant's brother came in and took him.

Defendant's evidence tended to show that he had had three or four beers, was not intoxicated, was unfamiliar with the car he was driving, and its speedometer was not accurate. He went in his house and told his wife that she was not to let the officers in until they got a warrant for his arrest; and that he was accused of speeding, the officer had "maced him," it made him mad, and he was not going until they got a warrant. After he got in the house, he sat down and ate his supper and called his attorney who asked to speak to one of the officers. While he was talking to his attorney, the officers broke the glass in the door, came in, knocked his wife down, walked over her and took him forcibly from the phone and out of the house. They leaned him against his wife's car and proceeded to beat him with their blackjacks. The gun his son pointed toward the officers was a broken BB gun.

[1] The State introduced in evidence the driver's license check from the North Carolina Department of Motor Vehicles of Max Bradshaw Fountain, Box 1, Jacksonville, North Carolina, for the purpose of proving the previous offense of driving while under the influence of alcoholic beverage, conviction being 17 November 1964, Jacksonville Municipal Court. Among the stipu-

lations included in the record is the following: "IT IS FURTHER STIPULATED: Driver's-License-Record Check of the North Carolina Department of Motor Vehicles (State's Exhibit No. 1) shows that Max Bradshaw Fountain was convicted of Driving While Intoxicated on July 6, 1964 in the Jacksonville Municipal Court on November 17, 1964 and will not be included herein as an exhibit." Defendant testified on direct examination as to various charges, convictions, and pleas in cases involving motor vehicle violations and stated: "Seven years ago in 1964 there was a case of Driving Under the Influence." Defendant contends on appeal that his motion for nonsuit as to the "second offense" portion of the charge of driving under the influence should have been granted because there was no admission by defendant that he was the same person referred to in the exhibit and the stipulation and, in the absence of judicial admission, the question of whether there was a former conviction was for the jury. Defendant relies on *State v. Powell*, 254 N.C. 231, 118 S.E. 2d 617 (1961). There the State introduced the record of a prior conviction. There was no further evidence adduced referring to a former conviction, and although defendant testified, he was not examined on direct or cross-examination with respect to any former conviction. The court instructed the jury that defendant had admitted in open court that he had been convicted of driving under the influence and did not leave with them the determination of that question. In the case before us, however, in addition to defendant's own testimony indicating a prior conviction, there is a stipulation in the record which, in our opinion, leaves no doubt but that defendant had a prior conviction. Nevertheless, conceding *arguendo,* that there was no such admission, the court instructed the jury, in substance, that the defendant was charged with the second offense of driving under the influence; that the State had offered evidence, and the defendant, as the court recalled the defendant's own evidence, had indicated that he was convicted on a prior occasion in 1964, which "constitutes some evidence that he is guilty of the second offense of driving under the influence, if you find him to be guilty of that offense on this occasion." This assignment of error is without merit and is overruled.

[2]   Defendant makes no argument with respect to his exception to the denial of his motion for nonsuit on the charge of resisting arrest, and this exception is deemed abandoned.

Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

[3] The only other exception brought forward and argued in defendant's brief is exception No. 5 which is directed to the charge of the court to the jury. Although the exception is not properly before us, we have considered it and find no prejudicial error. Defendant contends that the court failed to charge that if the arrest was illegal, the defendant had the right to resist with such force as was reasonably necessary. In our opinion the legality of the arrest is too obvious to merit discussion. This exception is overruled.

[4] Defendant has filed with the Court his written motion to arrest judgment contending that the warrant was defective as to the charge of resisting arrest, that the State moved to amend the warrant, that there was no actual ruling by the court, but by stipulation it was allowed although the amendment was not actually executed by writing the amendment into the allegations of the warrants. Defendant urges that the fatal defect, therefore, was not cured. The record shows that in its motion to amend, the State orally stated all the elements of the violation charged and following that asked the defendant how he pled to that charge. Whereupon counsel answered "not guilty." The record shows the following: "Stipulations by Assistant Solicitor and Counsel for Defendant: IT IS STIPULATED that the warrant was amended to conform to the foregoing amendments." Defendant cannot now be heard to say that the warrant was not properly amended. The motion is denied.

Defendant has had a fair and impartial trial in which we find no prejudicial error.

No error.

Judges CAMPBELL and PARKER concur.